WO JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Jay Kirkwood, | No. CV 21-00856-PHX-MTL (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Paul Penzone, et al., | |
| Defendants. | |

Plaintiff Manuel Jay Kirkwood, who is confined in a Maricopa County Jail, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will order Defendant Penzone in his official capacity only to answer Count One of the Complaint and will dismiss Count Two and the remaining Defendants without prejudice.

**I.    Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $52.17. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

. . . .

**II.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

### III. Complaint

In his two-count Complaint, Plaintiff sues Maricopa County Sheriff Paul Penzone; Correctional Health Services (CHS) Director Clutchfield; Sergeants Gibbs and Cost; Detention Officers Boyle, Fallon, Sharaqq, Holmes, Hansen, Williams, Fink, Dicks, Barns, Bruce, Ojeda, Albrecht, and Tolbert; and CHS Providers Kevin and Nurses 1-6. Plaintiff asserts claims regarding his conditions of confinement and medical care. He seeks monetary relief, as well as his costs and fees associated with this case.

In Count One, Plaintiff alleges that when he entered the Fourth Avenue Jail on February 20, 2020, he was "clear of exposure" to COVID-19 and was healthy apart from leg injuries and high blood pressure. In March 2020, the Centers for Disease Control (CDC) issued guidelines for controlling the spread of COVID-19 in jails and prisons.[1] Between March and June 2020, the Detention Officer Defendants[2] regularly reported to work without a mask, reported to work although they were exhibiting symptoms of COVID-19, failed to use gloves or exchange used gloves when handling meals and tablets and touching surfaces in the Jail, did not provide detainees hand sanitizer or new mattresses, and did not sanitize in any of the cells in which Plaintiff was confined.

In the first or second week of June 2020, while Plaintiff was housed in pod 3-C-1[3] cell #1, he "encountered" another detainee, nicknamed "Playboy," who was housed in pod 3-C-1 cell #6. "Playboy" was exhibiting serious symptoms of COVID-19 and was taken to CHS. After a "short visit," "Playboy" was returned to his cell with no restricted movement, although he was still exhibiting symptoms, including coughing and body aches.

---

[1] Plaintiff appears to specifically refer to the March 23, 2020 *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* which "provides interim guidance specific for correctional facilities and detention centers during the outbreak of COVID-19, to ensure continuation of essential public services and protection of the health and safety of incarcerated and detained persons, staff, and visitors." *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated May 6, 2021).

[2] Plaintiff refers to Defendants Gibbs, Cost, Boyle, Fallon, Sharaqq, Holmes, Hansen, Williams, Fink, Dicks, Barns, Bruce, Ojeda, Albrecht, and Tolbert.

[3] Plaintiff also refers to this pod as 3-C-100.

1   Either that night or the next night, "Playboy" collapsed in his cell or in the day room due
2   to "extreme complications." "Playboy" was taken out of the housing unit on a stretcher,
3   accompanied by five or six nurses, all of whom were masked.

4         "Playboy's" cellmate was allowed to remain in his cell without restrictions. Plaintiff
5   asserts that "[w]ith the CDC guidelines['] authoritative verb[i]age," "Playboy's" cellmate
6   should have been screened, restricted to his cell, and moved to an observation unit "to
7   combat the slightest pos[s]ible COVID spread." However, the cellmate was not only
8   allowed to remain in his cell, he was also permitted to eat with other detainees and
9   "meander around" in the unit and in the day room, although he "could possibly be
10  asymptomatic" but still be infected with the virus.

11        Before Plaintiff was moved to pod 3-C-1, he had not experienced any symptoms of
12  COVID-19, but after he was moved into 3-C-1 cell #1 and "encountered" the detainees in
13  cell #6 and their "suspicious eventual (though separate) departures," Plaintiff began to
14  experience serious eye and joint aches, as well as headaches and earaches. Tests for
15  COVID-19 were nonexistent until three to five days after the detainees in cell #6
16  "departed," when several detention officers and medical personnel offered tests to the
17  detainees in pod 3-C-1. Plaintiff was tested, and on June 17, 2020, he was told to "roll up,"
18  along with 11 or 12 other detainees in 3-C-1. Plaintiff was "overcome with so much fear"
19  and could not "believe it was happening" to him.

20        Plaintiff was moved to a holding tank, where he spoke with Defendant Kevin.
21  Defendant Kevin confirmed that Plaintiff had tested positive for COVID-19. Plaintiff
22  asked Defendant Boyle (or Doyle) to contact medical staff to "get help for [his] sickness."
23  Defendant Boyle responded that "they" would be "coming around." When Plaintiff was
24  moved to the quarantine unit, he asked Defendant Boyle for grievance forms, but Boyle
25  told Plaintiff he was busy and to "ask the next shift." Plaintiff did so, but he was too sick
26  to "chall[e]nge" any shift officer, and he was not "afforded the procedure to file a
27  complaint."

28        While Plaintiff was in the quarantine unit, he encountered the two detainees who

had been housed in 3-C-1 cell #6, and both confirmed they had tested positive for COVID-19 and were still recovering. One of the detainees sounded "in a weak state" and told Plaintiff that "they almost let him die." Plaintiff alleges that by "they," the detainee meant MCSO detention officers. Plaintiff "enlightened" the detainee that he also was really sick and did not understand why the Fourth Avenue Jail and MCSO, "in concert with" Defendant Penzone, did not protect them from the virus. Plaintiff told "Playboy" that "they" should have quarantined him when he initially complained of symptoms and went to the medical unit, instead of returning "Playboy" to his cell.

Within 24 or 48 hours after he was moved to the quarantine unit, Plaintiff was released from the Fourth Avenue Jail without pain medication or relief for any of his symptoms. As his injuries, Plaintiff alleges he suffered extreme headaches, eye and joint pain, painful diarrhea, repetitive coughing to the point that he would vomit regularly, and serious chest pain. Plaintiff claims he lost his senses of taste and smell and was "not allowed" to gain employment due to "the continued fear" while he had the virus. He asserts that even after he began to recover, he was unemployable, due to "COVID[-] 19 fear." Plaintiff alleges he also "suffered mentally" because he thought he was going to die, and "the virus . . . still has [him] in fear [and] so much emotion."

Plaintiff asserts that Defendant Penzone, in his official capacity as Maricopa County Sheriff, failed to adhere to CDC guidelines with respect to COVID-19 and ensure that detention officers at the Fourth Avenue Jail strictly followed CDC guidelines. Specifically, Plaintiff asserts Defendant Penzone failed to issue personal protective equipment (PPE), including masks, and failed to ensure that detention officers wore masks. Plaintiff claims Defendant Penzone also failed to send home detention officers who exhibited symptoms of COVID-19 while they were on duty. Plaintiff alleges Defendant Penzone failed to ensure that expedited testing for COVID-19 was made available before June 2020 and failed to ensure detainees received masks or cleaning supplies. Plaintiff asserts that if Defendant Penzone had "enacted" the CDC guidelines in March, April, or May 2020, this

most likely would have prevented the spread of COVID-19 and Plaintiff contracting the virus.

Plaintiff alleges Fourth Avenue Jail detention officers were aware of CDC guidelines but failed to adhere to the "a[u]thor[it]ativeness" of the guidelines. Plaintiff claims the detention officers were "extremely reckless in their lack of preventing the spread" of COVID-19. Plaintiff asserts Defendant Penzone "acted in concert" with the detention officers by "totally [and] seriously underperforming [and] not coming close to affording the minimum of its own standards," let alone the "a[u]thor[it]ative" requirements set forth in the CDC guidelines.

Plaintiff alleges Defendant Clutchfield failed to ensure that "his" pill call nurses wore masks before June 2020 and failed to ensure that proper preventive measures were taken to curb the spread of COVID-19.

In Count Two, Plaintiff alleges that on June 17, 2020, CHS was "in the know" that Plaintiff had tested positive for COVID-19. After he tested positive, he was placed in observation, but he was not afforded any relief in the form of pain medication for his severe earaches and headaches. Plaintiff claims CHS did nothing to relieve his shortness of breath, such as providing breathing treatments, and did nothing regarding the joint pain he was experiencing. Plaintiff asserts that per the CDC guidelines, "CHS/MCSO needed to coordinate with the public healthcare system" to ensure adequate quarantine facilities were available to prevent the spread of the virus, but Plaintiff was released without these "ensurances." Plaintiff alleges Defendants Penzone and Clutchfield are responsible for this lack of medical care.

**IV. Discussion**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury

as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

### A.   Defendant Penzone

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff's allegations against Defendant Penzone fail to plausibly show that Penzone was personally involved in the deprivation of Plaintiff's civil rights but rather stem solely from Penzone's role as Maricopa County Sheriff. Accordingly, the Court will construe Plaintiff's claims as directed against Defendant Penzone in his *official* capacity only and evaluate them accordingly.

Liberally construed, Plaintiff has stated a Fourteenth Amendment conditions-of-confinement claim in Count One against Defendant Penzone in his official capacity only based on Plaintiff's allegations that Penzone failed to take adequate precautions to prevent

the spread of COVID-19 in the Fourth Avenue Jail. The Court will require Defendant Penzone to answer Count One of the Complaint.

### B. Defendant Clutchfield

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell*, 436 U.S. 658; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has not alleged that Defendant Clutchfield personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. Rather, Plaintiff names Defendant Clutchfield based solely on his role as CHS Director. Plaintiff's allegation that "CHS" was aware that he had tested positive for COVID-19 but failed to provide him adequate medical care before his release from custody is insufficient to support a conclusion that Plaintiff suffered any injury as a result of Defendant Clutchfield's conduct. The Court will therefore dismiss Defendant Clutchfield.

### C. Conditions of Confinement

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take

reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### 1. Defendants Detention Officers and Nurses

Plaintiff's allegations against the Detention Officers and Nurses are too vague and conclusory to support a conclusion that any particular Defendant was aware of and disregarded a substantial risk of serious harm *to Plaintiff* because of their conduct. Plaintiff does not allege that he was at a particular risk of contracting COVID-19 or that any named Detention Officer or Nurse was aware that Plaintiff was at a particular risk. Although Plaintiff alleges certain Defendants did not wear proper PPE or reported to work despite exhibiting symptoms of COVID-19, he does not allege any facts to support a conclusion that he contracted COVID-19 *because of* the Detention Officers' or Nurses' conduct. The Court will therefore dismiss Defendants Gibbs, Cost, Boyle, Fallon, Sharaqq, Holmes, Hansen, Williams, Fink, Dicks, Barns, Bruce, Ojeda, Albrecht, Tolbert, and Nurses 1-6.

### 2. Defendant Kevin

Plaintiff alleges only that Defendant Kevin confirmed that Plaintiff had tested positive for COVID-19. This allegation is insufficient to support a conclusion that Plaintiff

suffered any injury as a result of Defendant Kevin's conduct. The Court will therefore dismiss Defendant Kevin.

### D. Medical Care

The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon*, 888 F.3d at 1124-25 (quoting *Castro*, 833 F.3d at 1070). Like a conditions-of-confinement claim, to state a medical care claim, a pretrial detainee must show

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff does not identify any named Defendant or any other individual from whom Plaintiff requested treatment for his COVID-19 symptoms, specify when or how he requested treatment, or state the response, if any, he received to his requests. Thus, Plaintiff has failed to state a claim in Count Two, and it will be dismissed.

. . . .

. . . .

## V.     Warnings

### A.     Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis.  Failure to comply may result in dismissal of this action.

### B.     Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C.     Copies

Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $52.17.

TERMPSREF

(3) Count Two is **dismissed** without prejudice.

(4) Defendants Clutchfield, Gibbs, Cost, Boyle, Fallon, Sharaqq, Holmes, Hansen, Williams, Fink, Dicks, Barns, Bruce, Ojeda, Albrecht, Tolbert, Kevin, and Nurses 1-6 are **dismissed** without prejudice.

(5) Defendant Penzone must answer Count One in his official capacity only.

(6) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendant Penzone.

(7) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order.

(11) If Defendant agrees to waive service of the Summons and Complaint, Defendant must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(12) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned

by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13) Defendant Penzone must answer Count One of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14) This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 26th day of May, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge